Filed 9/21/23  Silver Dot Properties v. Hartbeat Digital CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SILVER DOT PROPERTIES, LLC, <br><br> Appellant, <br><br> v. <br><br> HARTBEAT DIGITAL, LLC, <br><br> Respondent. | B316452 <br><br> (Los Angeles County Super. Ct. No. 20STCP04092) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patricia D. Nieto and Kristin S. Escalante, Judges.  Affirmed.

Akerman, Michael R. Weiss, Jonathan M. Turner and William Bernfeld for Appellant.

Venable, Ben D. Whitwell and Melissa C. McLaughlin for Respondent.

_____

Appellant Silver Dot Properties, LLC, appeals from a judgment in favor of respondent HartBeat Digital, LLC, following orders confirming two arbitration awards and denying petitions to vacate the awards in this matter arising out of the interpretation of a commercial lease. On appeal, Silver Dot contends the arbitrator exceeded his power by interpreting the lease to provide perpetual renewals because: (1) public policy requires a right to perpetual renewals be created by clear, explicit language in the lease, without resorting to extrinsic evidence, (2) the language of the lease in this case was ambiguous and did not state a clear intent to create a right of perpetual renewals, and (3) the arbitrator relied on extrinsic evidence to interpret the lease to provide perpetual renewals, in violation of public policy. We conclude the arbitrator expressly found the lease clearly and unambiguously provided for perpetual renewals, a finding which is not reviewable by the court for error. Therefore, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### Lease Agreement

On August 3, 2016, Silver Dot entered into an agreement to lease commercial property in Canoga Park, California, to Hartbeat for use as a film studio. The lease term began on September 1, 2016, and ended on August 31, 2019. The property was in poor condition, so the lease contemplated that in addition to rent, HartBeat would make a substantial financial investment to make the property suitable for use. HartBeat spent more than $1 million over two years to renovate the property.

2

The lease provided for renewal as follows: "Upon giving written notice no later than 60 days before the expiration of the term of this Lease, the Tenant may renew this Lease for an additional 1, 2 or 3 year term at the end of each term. All terms of the renewed lease will be the same except for any signing incentives/inducements and this renewal clause and the amount of the rent." The lease contained a calculation for annual rent increases. The parties agreed California law governed the lease provisions, and any controversy or claim arising out of the agreement was to be settled by binding arbitration administered by ADR Services, Inc.

On June 21, 2019, Hartbeat delivered a notice requesting renewal for three years. Silver Dot attempted to renegotiate the lease terms. Eventually, Silver Dot stated that Hartbeat occupied the property as a month-to-month tenant.

## Arbitration and Merits Award

On November 21, 2019, Hartbeat initiated arbitration. A hearing was conducted on June 19, 2020. Hartbeat argued that it effectively exercised the option for renewal, while Silver Dot disagreed and asserted HartBeat was a month-to-month tenant. The arbitrator was required to interpret the renewal provision of the lease, including whether HartBeat had a right to unlimited or perpetual renewals. Silver Dot argued that a provision for perpetual renewal of the lease was not supported by the language of the lease and was contrary to California's public policy.

On September 3, 2020, the arbitrator served an interim arbitration award (the merits award). The arbitrator found HartBeat had an option to renew the lease, which HartBeat

3

effectively exercised. The arbitrator summarized the extrinsic evidence surrounding negotiation of the lease which supported HartBeat's argument that the parties intended HartBeat to have unlimited renewals. The arbitrator also discussed Silver Dot's view that under the rule of construction expressed in *Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 895 (*Ginsberg*), extrinsic evidence was not permitted to determine whether the parties intended to allow perpetual renewals. The arbitrator distinguished the lease provision at issue in the present case from the ambiguous nature of the provision at issue in *Ginsberg*.

After reviewing the arguments of both parties, the arbitrator found "[t]he language in the first sentence of the renewal clause is clear and unambiguous, that [HartBeat] can renew the Lease 'at the end of each term' and there is no stated limitation." In addition to the plain language of the first sentence of the renewal provision, the arbitrator found the parties' intent for perpetual renewals was evidenced in several provisions of the lease that contemplated a long-term tenancy. There was a specific formula for annual rent increases without limitation, HartBeat was permitted to make extensive renovations and control rentals to third parties, rent was contingent on HartBeat making substantial improvements, HartBeat had a right of first refusal to purchase the property, and the lease was not a preprinted form. The arbitrator noted that extrinsic evidence of the parties' negotiations supported his view of the plain language of the lease.

The arbitrator concluded the second sentence of the renewal provision, stating the terms of the renewed lease would be the same except for the renewal clause, was a drafting error carried over from a prior version that permitted only one renewal

4

term, and therefore, the arbitrator disregarded the phrase based on mutual mistake.

The arbitrator concluded: "The language of the lease and the intentions of the parties leads this Arbitrator to find that the renewal clause was clear and unambiguous as interpreted under California law including the portions disregarded by this Arbitrator. This Arbitrator has distinguished this case from that of the *Ginsberg* situation in that the clause under consideration here clearly states the intentions of the parties at the time they entered the contract without the need for extrinsic evidence. However, to the extent counsel may believe otherwise, if the language were ambiguous, this Arbitrator believes that finding only one renewal was available to [HartBeat] would work an injustice and the special rule of construction adopted in *Ginsberg* would have created this injustice and such rule would, by discretion given this Arbitrator under the [Code of Civil Procedure] and ADR Services, Inc. Rules of Arbitration, not have been applied in this case." (Underscoring omitted.)

The arbitrator declared his finding, based on all the evidence presented and the applicable California law, that "[HartBeat] bargained for and [Silver Dot] accepted that [HartBeat] would have unlimited renewals of the Lease, for 1, 2, or 3 years, under Paragraph 22[ ] of the Lease as modified by this interpretation and subject to the agreed upon rent escalations provided in said Lease." The arbitrator further found the renewal clause was subject to Civil Code section 718, limiting renewals to 99 years.

5

## Silver Dot's Motion to Vacate the Merits Award

On December 11, 2020, after the merits award became final, Silver Dot filed a petition in the trial court to vacate the award. Silver Dot argued that the arbitrator exceeded his authority by relying on extrinsic evidence to interpret an ambiguous renewal provision, giving HartBeat the right to perpetual renewals, in violation of public policy expressed in *Ginsberg*.

The trial court denied the petition to vacate the award on February 22, 2021. The court noted that an arbitrator's decision is final and not reviewable for errors, even if they are apparent on the face of the decision and cause substantial injustice. In addition, the court concluded the special rule of construction stated in *Ginsberg* was not a "public policy" such that the arbitrator exceeded his jurisdiction with respect to the alternative ruling. *Ginsberg* allowed for perpetual leases and applied an evidentiary principle that extrinsic evidence should not be admitted to prove the parties' intent concerning perpetual renewals. Civil Code section 718 expresses a public policy validating commercial lease renewals up to a total of 99 years. The arbitration award was in line with *Ginsberg* and public policy, as the arbitrator found the renewal provision clearly and unambiguously allowed renewal of the lease at the end of each term.

**Fee Award and Motion for Reconsideration**

On February 25, 2021, the arbitrator issued a 20-page fee award awarding $214,992.01 in costs and attorney fees to HartBeat. In determining the reasonable hourly rates, the arbitrator found the case was not simply a landlord-tenant dispute, as Silver Dot argued. The arbitrator explained that he took into consideration "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in this case." In applying these factors, the arbitrator discussed the parties' interests. The arbitrator noted that while drafting, revising, and finalizing the lease, it appeared the attorneys for both parties "failed to express in words in a proper fashion the intention of both the parties with respect to the number of renewals that the tenant would be able to make ultimately. [¶] These drafting oversights lead to the legal positions and posturing that the sides took and complicated this matter because of the implications of the mutual oversights. The legal issues became inextricably entwined with the factual issues and were not just whether [HartBeat] had a right to renew the lease even once but whether that right to renew was by the actions of both parties one that was in perpetuity or not. [¶] [Silver Dot] used as its foundation for its argument that [HartBeat] should have no renewals and could not possibly have a perpetual lease, subject to the statutory limitation of 99 years maximum, pursuant to the case of *Ginsberg v. Gamson* (2012) 205 [Cal.App.4th] 873. [(Fn. and underscoring omitted.)] On its face and in the abstract, [Silver Dot's] position was a strong

position.  There is little doubt that outside of the arbitration universe, the position [Silver Dot] took would have been extremely difficult for [HartBeat] to overcome.  Thus, in this Arbitrator's view, the objective difficulty of the task facing [HartBeat] was difficult even in arbitration."

"In considering the skill required and the skill employed by the attorneys for Venable LLP in this matter, there was nothing left that wasn't done by them to inform their opposing counsel, educate this Arbitrator and skillfully present their theories, the underlying facts that supported those theories, and the weaknesses inherent in their opponent's case."  The arbitrator also praised the skill of Silver Dot's attorneys in framing the issues and presenting their case, but noted the focus was the reasonableness of the hourly rates charged by Venable's attorneys.

Silver Dot filed a motion in the trial court for reconsideration of the petition to vacate the merits award, arguing that the arbitrator's statements in the fee award contradicted findings in the earlier award and admitted the lease did not clearly and explicitly provide for unlimited renewals.  The trial court denied the petition for reconsideration, finding that the fee award did not contradict the holding of the earlier award or the legal justifications.

On June 16, 2021, HartBeat filed petitions to confirm each of the arbitration awards.  Silver Dot opposed the petitions and filed a petition to vacate the fee award on the same grounds as the earlier petition to vacate the merits award.  On August 31, 2021, the trial court confirmed the arbitration awards and denied the petition to vacate the fee award.  On September 10, 2021, the

8

court entered judgment for Hartbeat.  Silver Dot filed a timely appeal from the judgment.

## DISCUSSION

## <u>Judicial Review of Arbitration Awards</u>

Arbitration awards are generally not subject to judicial review.  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).)  "[B]ecause it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.'  [Citations.]  More specifically, courts will not review the validity of the arbitrator's reasoning.  [Citations.]  Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award.  [Citations.]  [¶]  Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law."  (*Id.* at p. 11.)

Code of Civil Procedure section 1286.2 provides for vacating an arbitration award, however, when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."  (Code of Civ. Proc., § 1286.2, subd.(a)(4).)

"We subject the trial court's ruling on a petition under Code of Civil Procedure section 1285 to a different standard of review than the underlying arbitration award.  [Citation.]  We apply the substantial evidence test to the trial court's determination of disputed factual issues.  [Citation.]  'Issues of statutory

interpretation and the application of that interpretation to a set of undisputed facts are questions of law subject to independent review by this court. [Citation.]' " (*Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1087.)

**Perpetual Lease Renewals**

Silver Dot contends that the arbitrator exceeded his powers by finding the lease provided a right to perpetual renewals, because public policy expressed in *Ginsberg* requires a right to perpetual renewals be explicit and clear, without resort to extrinsic evidence. HartBeat asserts *Ginsberg* merely states an evidentiary rule, which the arbitrator was free to disregard. We need not dissect the holding in *Ginsberg*, however, because the arbitrator found the plain language of the renewal provision clearly and unambiguously provided for perpetual renewals of the lease, consistent with the holding in *Ginsberg*.

The *Ginsberg* court stated: "Despite being disfavored, courts will enforce a lease provision that grants a tenant the right to unlimited renewals, so long as the parties' intent to create that right is explicit and clear." (*Ginsberg, supra,* 205 Cal.App.4th at p. 884.) If a lease is uncertain as to whether it was intended to be renewable in perpetuity, it will be construed as allowing one renewal. (*Id.* at pp. 884–885.) " '[¶] On the other hand, a clause providing for perpetual renewals at the option of the lessee is held to be enforceable when it appears that it was clearly the intention of the parties that the lessee should have that right.' " (*Id.* at p. 885.)

The *Ginsberg* court further stated: " 'Unless it appears from the covenant in the lease, by express term or clearly by

10

implication, that plaintiffs are entitled to have the lease renewed for all time to come, a court of equity will not decree specific performance of the covenant for that purpose. . . . So it has been said that a covenant which does not plainly imply or express a perpetual renewal, will not be construed to give this right.' [Citations.] When confronted with a lease that is equivocal or ambiguous as to whether the tenant has a right to unlimited renewals of the lease, courts following this rule do not apply principles of contract interpretation that would allow admission of extrinsic evidence relevant to the parties' intent, or rules construing ambiguities against the drafter. Instead, courts simply will not construe the provision as creating a right to perpetual renewals." (*Ginsberg, supra,* 205 Cal.App.4th at p. 885.)

In this case, the arbitrator expressly found the renewal clause clearly and unambiguously provided that HartBeat could renew the lease in perpetuity, without limitation. In addition to the plain language of the provision, the arbitrator noted other provisions of the lease supported his conclusion that HartBeat had a right to unlimited renewals in the context of the agreement as a whole. The arbitrator did not rely on extrinsic evidence to reach his conclusions, but noted the extrinsic evidence presented by the parties supported his interpretation of the plain language of the agreement. *Ginsberg* does not purport to articulate public policy, but even if it did, the arbitrator's award was consistent with the rule expressed in *Ginsberg.* This court may not review the arbitrator's interpretation of the plain language of the agreement for errors of law or fact. The trial court properly confirmed the arbitration awards, and the judgment in favor of HartBeat must be affirmed.

11

## DISPOSITION

The judgment is affirmed.  Respondent HartBeat Digital, LLC, is awarded its costs on appeal.
NOT TO BE PUBLISHED.


MOOR, J.


We concur:


BAKER, Acting P. J.


KIM, J.

Silver Dot Properties, LLC v. HartBeat Digital, LLC
B316452


BAKER, Acting P. J., Concurring



I join the opinion for the court. I write separately only to emphasize that the proper disposition of this appeal does not require resolution of whether *Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873 is correctly decided—a question the opinion for the court does not reach.



BAKER, Acting P. J.